UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA M. IBARRA, ) | Case No. CV 12-9140-SP |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, ) Acting Commissioner of Social Security ) Administration, ) | |
| Defendant. ) | |

**I.**

**INTRODUCTION**

On October 25, 2012, plaintiff Christina Marie Ibarra filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of Supplemental Security Income ("SSI") benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the

Administrative Law Judge ("ALJ") properly rejected the opinion of plaintiff's treating physician, Dr. Schmidt. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 2-10; Memorandum in Support of Defendant's Answer ("Def. Mem.") at 2-5.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ improperly rejected the opinion of plaintiff's treating physician without providing specific and legitimate reasons supported by substantial evidence for doing so. Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-nine years old on the date of her May 10, 2011 administrative hearing, has a tenth grade education and some nurse's training. *See* AR at 39, 40, 164, 192.

On October 28, 2009, plaintiff applied for SSI, alleging that she had been disabled since October 16, 2009 due to constant pain in her shoulders, neck, hands, and hip. *Id.* at 164, 181, 186. Plaintiff's application was denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 19, 58, 63. On May 10, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 38-50. The ALJ also heard testimony from Sandra Snider, a vocational expert. *Id.* at 50-53.

Applying the well-known five-step sequential evaluation process, the ALJ found that at step one, the plaintiff had not engaged in substantial gainful activity since October 28, 2009, when she filed her application. *Id.* at 11.

At step two, the ALJ found that plaintiff suffered from the severe impairment of fibromyalgia. *Id.*

2

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform the full range of light work as defined in 20 C.F.R. Part 416.967(b). *Id*.

At step four, the ALJ found that transferability of job skills was not an issue because plaintiff had no past relevant work. *Id.* at 13.

At step five, the ALJ considered the plaintiff's age, education, work experience, and RFC for the full range of light work, and concluded that "there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." *Id*. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 14.

On May 20, 2011, the ALJ denied plaintiff's request for benefits. *Id.* at 9-14. Plaintiff then filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

3

substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends that the ALJ failed to properly consider the opinion of her treating physician, Dr. Schmidt, regarding plaintiff's physical and mental limitations. Pl. Mem. at 2-9. Specifically, plaintiff contends that the ALJ erred when he (1) "merely set forth a summary of conclusory reasons for rejecting Dr. Schmidt's opinion"; (2) failed to consider the length, nature, and extent of Dr. Schmidt's relationship to plaintiff; and (3) improperly concluded that Dr.

Schmidt's opinion was not supported by objective medical evidence. *Id.* at 7. The court agrees.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2).

The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If the treating physician's opinion is contradicted by other opinions, the ALJ must then provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the contradicted opinion. *Id.* at 830.

Dr. Schmidt, plaintiff's treating physician, stated that plaintiff is unable to work because of chronic pain due to fibromyalgia and side effects of strong pain medication. AR at 12, 607-11. In contrast, the RFC assessments completed by Dr. Taylor, an examining physician, and the Disability Determination Service ("DDS") evaluator Dr. Lightfoot, a non-examining physician, found that plaintiff can perform a full range of light exertion work activities. *Id.* at 12, 366-76. The ALJ rejected Dr. Schmidt's opinion and instead accepted the RFC assessments of

5

Dr. Taylor and the Dr. Lightfoot. *Id.* at 12.

The ALJ gave three reasons for rejecting Dr. Schmidt's opinion: (1) "there is no evidence that he specializes in fibromyalgia"; (2) "he saw [plaintiff] for treatment only a few times"; and (3) "his statements are not well supported by objective medical evidence." *Id.* Plaintiff does not challenge the legitimacy of the first reason, and Dr. Schimdt's lack of specialization in fibromyalgia is a legitimate factor for the ALJ to consider. *See* 20 C.F.R. § 416.927(c)(5) (more weight generally given to opinion of specialist than to opinion of non-specialist). But there is also no evidence in the record that examining physician Dr. Taylor or non-examining physician Dr. Lightfoot specializes in fibromyalgia either. *See* AR at 12, 366-76. Thus, lack of fibromyalgia specialization plainly could not have been a determinative (or independently sufficient) reason for rejecting Dr. Schmidt's opinion.

The court therefore turns to the other two reasons given by the ALJ for rejecting Dr. Schmidt's opinion.

**A.** **The ALJ Insufficiently Weighed Dr. Schmidt's Opinion by Erroneously Concluding that Dr. Schmidt Only Saw Plaintiff a Few Times**

Plaintiff contends that the ALJ did not properly take into consideration the length, nature, and extent of the treating doctor's relationship to plaintiff when stating plaintiff had only seen Dr. Schmidt only a few times. Pl. Mem. at 7. The record indicates plaintiff was treated by Dr. Schmidt from 2008 to 2011. AR at 47, 189, 202, 426-52. Since 2008, Dr. Schmidt generated 26 separate progress notes regarding plaintiff. *Id.* at 426-52. Four of the progress notes either state that plaintiff is present for a prescription change or contain scheduling remarks. *Id.* at 427-28, 431, 433. The remaining 22 progress notes contain medical notes regarding plaintiff's physical and mental condition. *Id.* at 426, 429-30, 432, 434-52. Plaintiff's extended period of treatment and frequency of visits as reflected by the record plainly contradict the ALJ's statement that Dr. Schmidt "saw [plaintiff]

for treatment only a few times." *Id.* at 12.

Defendant stipulates that Dr. Schmidt did see plaintiff in August of 2009, January, April, May, and December of 2010, and January of 2011 for a total of six visits, but contends the other progress notes from Dr. Schmidt's office appear to have been signed and/or completed by nursing staff and not by Dr. Schmidt himself. Def. Mem. at 12. Nurse practiners are not included in the list of acceptable medical sources, although they are included among the "other sources" that may be considered. *See* 20 C.F.R. § 416.913(a), (d)(1). But the Ninth Circuit has held that the opinion of a nurse practitioner who works closely under the supervision of a physician and acts as an agent of the physician is properly considered to be a part of the physician's opinion. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) ("a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not"). That was the case here.

At the bottom of every progress note, the names of Dr. Schmidt, nurse practitioners Shawn McGuire and Amina Hersi, and physician assistant Tanya Pratt are listed below the signature line, apparently indicating that the nursing staff regularly work in conjunction with Dr. Schmidt. AR at 426-52. Out of 22 progress notes containing plaintiff's medical notes, 21 were either signed directly by Dr. Schmidt or were initialed, reviewed, and adopted by Dr. Schmidt as his own opinion. *Id.* Only one outlier progress note was completed by a member of the nursing staff and not initialed and adopted by Dr. Schmidt. *Id.* at 442. Thus, assuming the six in-person visits with Dr. Schmidt himself are insufficient to establishing a longitudinal relationship between Dr. Schmidt and plaintiff, the record objectively establishes plaintiff was treated by Dr. Schmidt and his nursing staff over 22 times spanning across a period of three years. *See id.* at 426-52. The ALJ's characterization of plaintiff's visits to Dr. Schmidt as "only a few times" is simply not supported by substantial evidence.

Because the ALJ misstated the record and failed to take into proper consideration the length, nature, and extent of Dr. Schmidt's relationship to the plaintiff, the ALJ erred by insufficiently weighing Dr. Schmidt's opinion.

**B.** **The ALJ Erred in Finding Dr. Schmidt's Statements Are Not Well Supported by Objective Medical Evidence**

The ALJ must carefully justify his or her views before rejecting the opinion of a treating doctor. *Ireland v. Astrue*, 256 Fed. Appx. 79, 81 (9th Cir. 2007). Thus, as stated, where conflicting medical opinions exist, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the treating physician's opinion. *Lester*, 81 F.3d at 830. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, the ALJ simply stated that Dr. Schmidt's statements were not well supported by objective medical evidence, but he provided virtually no discussion of that medical evidence. The ALJ stated only that it was "unclear whether [plaintiff] continues to take such large doses of pain relievers as she did in the fall of 2010, when she had a surgery and infection." AR at 12-13. The ALJ also noted that "prior to the surgery, [plaintiff] took Soma only, and there is no underlying reason to think such extensive pain management would be necessary in the long term." *Id.* at 13. This analysis of the medical evidence is both inaccurate and woefully inadequate to legitimize the ALJ's rejection of Dr. Schmidt's opinion based on lack of supporting medical evidence.

In concluding that "there is no underlying reason to think such extensive pain management would be necessary in the long term," the ALJ misstated the objective medical evidence. For example, the ALJ stated that plaintiff only took Soma prior to her surgery in the fall of 2010. *Id.* But multiple instances in the

8

record show that plaintiff took Percocet, Gabapentin, Lyrica, and Cymbalta in addition to taking Soma, and received injections in the neck and lower back for fibromyalgia pain, all well before plaintiff's surgery in the fall of 2010. *Id.* at 191, 196, 197, 203, 209, 434, 437, 439, 447. As of 2011, plaintiff continued to take Soma, Percocet, and Oxycodone for pain management. *Id.* at 40-52, 426-29. Further, at the hearing plaintiff indicated that she feels her symptoms are getting worse, and stated that her doctors are increasing her Oxycodone doses. *Id.* at 42, 49. As such, the ALJ's statement that "it is unclear whether [plaintiff] continues to take such large doses of pain relievers" is itself misleading, and the ALJ's pain management discussion as a whole is factually inconsistent with the medical record.

The only other part of the ALJ's opinion that might pass as a discussion of the medical evidence that supposedly does not support Dr. Schmidt's opinion is the ALJ's statement that plaintiff is not regularly seen by a fibromyalgia specialist. *See id.* at 13. But this statement is also not supported by substantial evidence. Rheumatology is the relevant area of specialty for fibromyalgia. *Jordan v. Northrop Grumman Corp Welfare Benefit Plan*, 370 F.3d 869, 873 (9th Cir. 2004) (overruled on other grounds by *Abatie v. Alta Health & Life Insurance*, 458 F.3d 955, 970 (9th Cir. 2006)). Plaintiff's medical record shows she was seen by a rheumatic arthritis specialist, Dr. Chia, in July 2010. AR at 48, 202, 213, 432. But the record is incomplete as to whether plaintiff continued to see Dr. Chia, and if so, how frequently. The ALJ did not cite to any part of the record to support his assertion. *Id.* at 13. Morever, even if it is correct that plaintiff has not regularly seen a fibromyalgia specialist, it is unclear how this undercuts Dr. Schmidt's opinion; the ALJ does not say.

Indeed, the fundamental problem with the ALJ's opinion is that he simply asserts the objective medical evidence does not support Dr. Schmidt's opinion, but does not articulate why this is so. He does not discuss the particulars of Dr.

Schmidt's opinion at all, or the medical evidence apart from his misstatements described above regarding the pain management records. A "detailed and thorough summary of the facts and conflicting clinical evidence," the ALJ's interpretations, and his findings based on the conflicting medical evidence are all conspicuously missing. *See Orn*, 495 F.3d at 632.

Defendant gamely tries to fill in the blanks left by the ALJ by asserting that Dr. Schmidt's opinion lacked support because, when asked what medical findings supported the opined limitations, Dr. Schmidt referred only to the diagnosis of fibromyalgia. *See* AR at 608; Def. Mem. at 4. But the ALJ did not refer to this answer by Dr. Schmidt or the fibromyalgia diagnosis generally as providing inadequate support for Dr. Schmidt's opinion, so the court cannot rely on this explanation. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citation omitted)). Further, there is no reason why Dr. Schmidt's shorthand reference to the fibromyalgia diagnosis would mean the record as a whole did not support his opinion.

In sum, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Schmidt's opinion. Accordingly, the ALJ erred in rejecting Dr. Schmidt's opinion.

## V.
## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 594, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings

turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ failed to properly evaluate the opinion of Dr. Schmidt. On remand, the ALJ shall reconsider the opinion provided by Dr. Schmidt and either credit his opinion or provide adequate reasons under the appropriate legal standard for rejecting his opinion. The ALJ shall then reassess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: July 2, 2013

SHERI PYM
United States Magistrate Judge